IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHARLES T. WHITE,

                Petitioner,

    v.                                      Civil Action No.
                                      9:00-CV-1709 (TJM/DEP)

UNITED STATES OF AMERICA,

                Respondent.

_____

APPEARANCES:                   OF COUNSEL:

FOR PETITIONER

CHARLES T. WHITE, *Pro Se*

FOR RESPONDENT

HON. GLENN T. SUDDABY        EDWARD P. GROGAN, ESQ.
United States Attorney            Assistant U.S. Attorney
Northern District of New York
100 S. Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Petitioner Charles T. White, a federal prison inmate as a result of a

drug and weapons possession conviction from this district, seeks habeas

review of the weapons possession component of his conviction under 28 U.S.C. § 2241 based upon the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501 (1995). In his petition, White also challenges the sufficiency of the indictment against him even though, as will be seen, the order from the United States Court of Appeals for the Second Circuit authorizing the filing of this proceeding references only White's claim under *Bailey.*

The government has responded to White's petition by acknowledging this court's limited jurisdiction under section 2241 to entertain his Bailey claim because of the unique circumstances of this case, but argues nonetheless that *Bailey* does not undermine petitioner's weapon possession conviction because of the adequacy of proof adduced at trial to demonstrate petitioner's liability under 18 U.S.C. § 924(c)(1)(A), under both the "use" and "carry" prongs of that statute. Respondent also seeks dismissal of the portions of White's petition which address the sufficiency of the underlying indictment, arguing that the court lacks jurisdiction to entertain that claim under section 2241.

Based upon my finding, in light of the unique circumstances of this case, that 28 U.S.C. § 2255 does not provide petitioner with an adequate

2

and effective remedy to test the lawfulness of his detention, I conclude that this court has jurisdiction to entertain White's section 2241 petition to the extent of his *Bailey* claim.  I further find, however, that petitioner has failed to show that he is actually innocent of the offense charged under section 924(c), and that the court lacks jurisdiction to address his non-*Bailey* claims, and therefore recommend dismissal of his petition.

I.      BACKGROUND

According to court records, petitioner is a federal prison inmate currently assigned to the United States Penitentiary in Pollock, Louisiana. White's confinement there was occasioned by a conviction entered in this district, following a trial, of, *inter alia*, participation in a conspiracy to possess with intent to distribute, and to distribute cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a) and 846, as well as using and carrying a firearm during the course of a drug trafficking crime, as proscribed by 18 U.S.C. § 924(c).

While the court has not been provided with the entire transcript of defendant's trial, excerpts have been supplied reflecting to some degree the extent of petitioner's involvement in the drug conspiracy which formed the basis for the charges against him, as well as his role in connection

3

with the firearms at issue in the two section 924(c) counts.  Count VI of the applicable superseding indictment alleges the unlawful use and carrying by the petitioner and certain of his co-conspirators, including William M. Beverly, William C. Pritchett, and Reginald Brown, of a Taurus .357 Magnum revolver, Model 66, with a six inch barrel, serial number 5170806, during and in relation to a drug trafficking crime under federal laws.[1]  Count VII of the superseding indictment alleges the use and carrying by the petitioner and four of his co-conspirators, including Pritchett, Beverly, Brown and Dana Foster, of a Colt Trooper .357 Magnum revolver, with a six inch barrel, serial number 58415, during and in relation to a federally cognizable drug trafficking crime.[2]

As a result of his conviction, White was sentenced on December 23, 1992 principally to a term of incarceration for 270 months.   Petitioner's conviction was affirmed by the United States Court of Appeals for the Second Circuit on September 23, 1993.  *See United States v. Beverly*, 5 F.3d 633 (2d Cir. 1993).

In addition to directly appealing, White sought collateral review of his

---

[1]    That gun has been designated as the "Boston gun", based upon the circumstances surrounding its acquisition.

[2]    This second gun has been referred to as the "Albany gun".

conviction by motion filed in this district pursuant to 28 U.S.C. § 2255.
That motion was denied on November 3, 1995.

On March 3, 1997, in the wake of the Supreme Court's decision
some fifteen months earlier in *Bailey*, petitioner sought habeas relief in
this district pursuant to 28 U.S.C. § 2241.  That petition was transferred to,
and ultimately dismissed by, the Second Circuit for failure to seek leave to
file a second or successive habeas petition.  Petitioner subsequently
sought permission from the Second Circuit to file a second or successive
motion under 28 U.S.C. § 2255 in the district court.  By order issued by
that court on March 6, 2000 White's request for permission to file a
successive motion under 28 U.S.C. § 2255 was denied.  In that order, the
Second Circuit noted that "[t]o the extent petitioner has a claim under
*Bailey v. United States*, 516 U.S. 137 (1995), he may bring that claim
under 28 U.S.C. § 2241 in the district court.  *See Triestman v. United
States*, 124 F.3d 361, 380 (2d Cir. 1997)."  Respondent's Memorandum
(Dkt. No. 23) Exh. F.

II.    THIS PROCEEDING

White commenced this proceeding on March 28, 2000 in the United
States District Court for the Eastern District of Texas, as the district of his

5

confinement at the time.  Petition (Dkt. No. 1).  In his petition, which is

filed under 28 U.S.C. § 2241, White asserts that he is actually innocent of

the weapons charge for which he was convicted in light of *Bailey*, and that

a motion under 22 U.S.C. § 2255 does not afford an adequate and

effective means of challenging his conviction.  Petition (Dkt. No. 1) ¶

13(a); Petitioner's Memorandum (Dkt. No. 2) at 6-7.  White's petition also

alleges that counts I, II, III, and V of the indictment against him are

defective, in that they fail to charge an offense and to provide him with

notice of all of the elements and the nature of the charges including, *inter*

*alia*, the quantity of drugs allegedly involved.[3]  Petition (Dkt. No. 1) ¶

13(b); Petitioner's Memorandum (Dkt. No. 2) at 6-7.  Based upon a motion

filed by the government, White's petition was transferred on November 9,

2000, to this district as the place of his conviction.  Dkt. Nos. 10, 12.

Following the issuance of an order on December 20, 2000 by District

Judge Thomas J. McAvoy denying petitioner's motion for summary

judgment as premature, Dkt. No. 14, the government responded to

White's petition on July 12, 2001.  Dkt. No. 23.  In that response, the

government acknowledges the court's jurisdiction to address petitioner's

---

[3]     Petitioner was not convicted on counts III and V of the indictment against
him.

*Bailey* argument, but asserts that the evidence at trial demonstrated that

he is not actually innocent of the weapons charges set forth in counts VI

and VII, notwithstanding *Bailey.*  Respondent also asserts that petitioner's

arguments addressing the sufficiency of his indictment, including under

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), are not

properly now before the court, and in any event lack merit.  Petitioner has

since filed a reply, or "traverse", on August 27, 2001 addressing the

government's opposition to his petition.  Dkt. No. 27.

This matter, which is now ripe for determination, has been referred

to me for the issuance of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Jurisdiction

_____In its response to his petition, the government acknowledges that

this court has jurisdiction to hear and decide White's claim under *Bailey*,

though it contests his entitlement to challenge the sufficiency of

the accusatory indictment, including under *Apprendi*, at this late

procedural juncture.  Despite this circumscribed concession, however, the

7

court is required to undertake its own examination to ensure that subject matter jurisdiction does in fact exist over White's *Bailey* claims.  *World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 160 (2d Cir. 2003) (citing *Petereit v. SB Thomas, Inc.*, 63 F.3d 1169, 1175 (2d Cir. 1995).

This case brings into sharp focus the distinction between petitions brought under section 2241, and motions made pursuant to section 2255. Section 2241 has evolved over time from the Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 81-82, empowering courts to issue writs of habeas corpus in cases involving prisoners held "'in custody, under or by colour of the authority of the United States.'"  *Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997) (quoting *McCleskey v. Zant*, 499 U.S. 467, 477-78, 111 S. Ct. 1454, 1461 (1991)).  Under the contemporary version of section 2241, "federal courts continue to retain jurisdiction to entertain habeas corpus petitions from federal prisoners 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 2241(c)(3)).  A petition under that section challenges the execution of a sentence, rather than the conviction or the sentence itself, and can assert as a basis for seeking habeas relief such matters as

8

calculations affecting the service of a sentence, parole denials, and conditions of confinement. *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002). Such a petition must be brought against the warden of the prison where the petitioner is confined, and filed in a court having jurisdiction over that named respondent. 17A Wright, Miller & Cooper, Federal Practice & Procedure § 4268.1 (Supp. 2001).

In 1948, Congress enacted section 2255 to provide prisoners with a vehicle allowing them to more efficiently challenge the reason for their detention – the underlying conviction and resulting sentence. *Id.; see also*, *e.g.*, *Bridges v. Vasquez*, 151 F. Supp.2d 1353, 1357 (N.D. Fla. 2001). Given this historical perspective, the Second Circuit has noted that

> [a] motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions. In contrast, § 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence, as it encompasses claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

*Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001) (quoting 28 U.S.C.

§ 2255) (internal citations omitted) (emphasis in original); *see also*

*Bridges*, 151 F. Supp. 2d at 1357.

When assessed against this backdrop, it can be seen that under

ordinary circumstances the petition in this matter, which clearly challenges

White's conviction and sentence rather than the terms of his confinement,

should have been filed as a motion brought under section 2255. *E.g.*,

*Brown v. Mendez*, 167 F. Supp.2d 723, 725-26 (M.D. Pa. 2001); *Young v.*

*Conley*, 128 F. Supp.2d 254, 357 (S.D. W. Va. 2001). Despite this finding

there is nonetheless an express statutory exception which allows a

petitioner to challenge his confinement under section 2241(c)(3) when

section 2255 does not afford an adequate remedy. As amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 114, section 2255 now provides, in relevant part,

that

> [a]n application for a writ of a habeas corpus in
> behalf of a prisoner who is authorized to apply for
> relief by motion pursuant to [section 2255], shall
> not be entertained if it appears that the applicant
> has failed to apply for relief, by motion, to the court
> which sentenced him, or that such court has
> denied him relief, <u>unless it also appears that the</u>
> <u>remedy by motion is inadequate or ineffective to</u>

<u>test the legality of his detention.</u>

28 U.S.C. § 2255 (emphasis added).  The burden of demonstrating that the remedy afforded under section 2255 is inadequate or ineffective rests with the petitioner.  *Brown*, 167 F. Supp.2d at 726 (citing, *inter alia*, *Reyes-Requena v. United States,* 243 F.3d 893, 901 (5th Cir. 2001)).

The meaning of the section 2255 savings proviso was addressed at length by the Second Circuit in *Triestman*.  In announcing the court's decision in that case, Judge Calabresi was careful to caution that the availability of review under section 2241 to a petitioner who has previously sought and been denied relief under section 2255 is narrow, noting that "[b]ecause the cases in which serious questions as to § 2255's constitutional validity are presented will be relatively few, our interpretation does not permit the ordinary disgruntled federal prisoner to petition for habeas corpus."  124 F.3d at 377-78.  Judge Calabresi went on to observe that

> [i]n reaching this result, we therefore respect Congress' intent to streamline collateral review and to discourage repetitive and piecemeal litigation, while at the same time we give meaning to Congress' express decision (reaffirmed in the AEDPA) to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it.

*Id.* at 378 (citations omitted).   Subsequent to *Triestman*, the Second

Circuit has clarified in *Jiminian* that the inability to meet the AEDPA's

gatekeeping requirement alone does not suffice to satisfy section 2255

and allow for the filing of a second or successive petition.  245 F.3d at

147-48; *see also Brown*, 167 F. Supp.2d at 726; *Bridges*, 151 F. Supp.2d

at 1360; *Laird v. Morrison*, 2:00CV00188, slip op. at 6 (E.D. Ark. May 2,

2001).

In support of their claims that the section 2255 savings clause

should be invoked in situations such as these, inmates similarly situated

to petitioner have relied upon cases involving challenges in the wake of

*Bailey*, including *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997).  In such

instances the savings clause has been found to be appropriately

implemented in order to afford relief to petitioners convicted prior to the

Court's decision in *Bailey* who in light of that decision could be "actually

innocent" of the crime of conviction in the absence of evidence of active

use of a firearm in connection with a drug transaction.  This undesirable

plight has led many courts to overlook the procedural niceties involved

and permit the filing of a section 2241 petition in order to avoid such a

miscarriage of justice.  *E.g.*, *Triestman*, 124 F.3d at 378-80; *Dorsainvil*,

119 F.3d at 250-52; *see also Laird*, 2:00CV00188, at 7-8.

In this instance the petitioner asserts – and the government does not dispute – that because of the nature of the first ground enunciated in the petition, and in particular petitioner's claim of actual innocence under *Bailey*, this court has jurisdiction to entertain his claims under section 2241. I agree, and accordingly recommend a finding that the court has jurisdiction over ground one of the instant petition, addressing the legal sufficiency of his section 924(c) conviction.

In the second ground of his petition, White attacks the legal sufficiency of the indictment against him. In support of that challenge, petitioner attempts to avail himself of the Supreme Court's ruling in *Apprendi v. New Jersey,* U.S. 466, 120 S. Ct. 2348 (2000), in which the Supreme Court held that any fact other than a prior action which increases the maximum potential penalty for a crime must be charged in an indictment and either admitted by the defendant, or proven beyond a reasonable doubt at trial.[4] White argues that because the relevant counts of the indictment against him did not allege specific drug quantities, even though, as respondent points out, count II, for example, references 21

_____

[4]     Petitioner's argument is actually premised upon *Jones v. United States,* 526 U.S. 227, 119 S. Ct. 1215 (1998), a precursor to *Apprendi.*

U.S.C. § 841(b)(1)(B)(iii) – which by definition involves possession of five or more grams of a mixture or substance containing cocaine base – the indictment, his conviction, and the subsequent sentence to a total of 270 months of confinement, which exceeds the statutory maximum for the base level cocaine base possession offense, must be set aside.

By now raising the issue relating to sufficiency of the indictment against him White in essence attempts to piggyback upon the first ground of his petition, which squarely falls within the savings provision of 28 U.S.C. § 2255 and was authorized by the Second Circuit to be filed.[5]  In assessing the sufficiency of petitioner's second ground, however, the court must make an independent determination of jurisdiction, and specifically whether it too falls within the narrow scope of the section 2255 savings clause.

As was previously noted, the burden of demonstrating that the remedy afforded under section 2255 is inadequate or ineffective rests with the petitioner.  *United States v. Lurie,* 207 F.3d 1075, 1078 (8th Cir. 2000) (citations omitted); *Round v. Mendez*, 167 F.Supp.2d 723, 726 (M.D. Pa.

---

[5]    On its face, the Second Circuit's order permitting the filing by White of a habeas petition under 28 U.S.C. § 2241 is limited to his claim under *Bailey*.  *See* Respondent's Memorandum (Dkt. No. 23) Exh. F.

2001) (citing *Reyes-Requena*, 243 F.3d at 901).  When analyzing the sufficiency of a section 2255 petition as a remedy, courts have consistently held that the mere failure to qualify for relief under that section, without more, does not suffice to demonstrate that it provides a remedy which is neither adequate nor effective.  *E.g., Bradshaw v. Story,* 86 F.3d 164, 166 (10th Cir. 1996) (citations omitted)*.*  Thus, for example, the inability to meet the AEDPA's gatekeeping requirement for permission to file a second or successive section 2255 motion alone does not suffice to satisfy the savings proviso and allow for the filing of such a second or successive petition.  *Jiminian*, 245 F.3d at 147-48.  Similarly, it has been held that the fact that a section 2255 motion would be untimely does not, without more, establish that a remedy under that section would be inadequate or ineffective.  *Lurie*, 207 F.3d at 1077-78.

In this case White has offered nothing to demonstrate that a motion under section 2255 addressing the sufficiency of the indictment against him would be inadequate or ineffective, other than the fact that he has been deemed unable to meet the AEDPA's gatekeeping requirement for permission to file a second or successive section 2255 motion.   As I have already noted this, without more, does not establish that a remedy

15

under that section would be inadequate or ineffective.  *Jiminian*, 245 F.3d at 147-48.  Petitioner has therefore failed to carry his burden of establishing a basis to excuse him from the requirement of moving under that section to vacate his conviction, asserting the *Apprendi* argument now raised, rather than bringing a proceeding under 28 U.S.C. § 2241.

In this regard it is important to note that the courts involving challenges in the wake of *Bailey*, including *Dorsainvil*, have drawn a distinction between the claims under *Bailey*, where a petitioner could be viewed as actually innocent of the crime of conviction, and challenges like those now at bar, asserting violations of *Apprendi*.  In this instance, in count II of his petition White does not profess actual innocence of the crime of conviction.  As such, I recommend rejection of the second ground of the petition as not properly asserted under section 2241.[6]

B.   Merits of Claim One

The petitioner was charged in counts VI and VII of the superseding indictment against him with willfully and unlawfully using or carrying a firearm during and in relation to a drug trafficking crime chargeable under

---

[6]      In any event it is now established that *Apprendi* does not apply retroactively to cases pending on collateral review, and thus is not available to the petitioner in this case to undermine the sufficiency of his conviction.  *Tyler v. Cain*, 533 U.S. 656, 121 S. Ct. 2478 (2001).

federal law.  As has been clarified by *Bailey* and its progeny, the "use" and "carry" provisions of section 924(c) are distinct and must be interpreted as having very different meanings.  *E.g.*, *Bailey*, 516 U.S. at 147, 116 S. Ct. at 507.

In *Bailey*, the Supreme Court was called upon to delineate the scope of the "use" provision of section 924(c), holding that under that portion of section 924(c), the prosecution was required to adduce "evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate [drug trafficking] offense." 516 U.S. at 143, 116 S. Ct. at 505 (emphasis in original).  The Court clarified by noting that "use" was intended to require more than "mere possession of a firearm by a person who commits a drug offense."  *Id.* at 143, 116 S. Ct. at 506.  In support of its somewhat restrictive reading of the term "use", the Court in *Bailey* inferred congressional intent to attribute distinct meanings to the terms "use" and "carry", explaining that

> [u]nder the interpretation we enunciate today, a firearm can be used without being carried, *e.g.,* when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, *e.g.,* when an offender keeps a gun

17

hidden in his clothing throughout a drug
transaction.

*Id.* at 146, 116 S. Ct. at 507.

Applying *Bailey*'s limitation to the "use" element of section 924(c),
the Second Circuit has interpreted the term "active employment" as to
"include[], *inter alia*, 'brandishing, displaying, bartering, striking with, and
most obviously, firing or attempting to fire" the weapon at issue.  *Rosario
v. United States*, 164 F.3d 729, 734 (2d Cir. 1998) (citing and quoting
*Bailey*, 516 U.S. at 148, 116 S. Ct. at 508), *cert. denied*, 527 U.S. 1012,
119 S. Ct. 2355 (1999).  The Second Circuit has also underscored the
distinction noted in *Bailey* between such active employment and more
passive or indirect involvement, such as mere placement of a weapon
near drugs or drug proceeds.  *Id.*

Cases decided since the Supreme Court's decision in *Bailey* have
recognized the distinction between the "use" provision as thus defined,
and the "carry" prong, observing that *Bailey* left intact the previously
understood meaning with regard to "carry".  In *United States v. Canady*,
for example, the Second Circuit, while rejecting an assertion by the
government that proximity to or accessibility of a weapon alone would
suffice to satisfy the elements of the "carry" provisions of section 924(c),

18

nonetheless concluded that evidence establishing that a defendant either has physical possession of a firearm (as distinct from constructive possession) or has moved the firearm from one place to another, during and in relation to a drug trafficking crime, could suffice.[7] *United States v. Canady*, 126 F.3d 352, 358 (2d Cir. 1997), *cert. denied*, 522 U.S. 1134, 118 S. Ct. 1092 (1998).

When this case is measured against these guidelines, it is clear the petitioner is unable to establish his actual innocence of the section 924(c) charge under either provision.  The evidence at trial, including testimony given by William Beverly, one of petitioner's co-conspirators, established White's use of the Taurus 357 Magnum revolver, the firearm referenced in count VI of the indictment, in furtherance of the co-conspirators' drug

---

[7]     The evidence at trial in *Canady* revealed that police officers discovered two guns hidden in a love seat, in close proximity to the defendant.  126 F.3d at 355. Discovered along with the gun were a package of cocaine, a pager and rubber bands. *Id.*  The defendant in *Canady* was also found to be in possession of keys to the house, and his fingerprints were recovered from one of the weapons.  *Id.*  The court concluded that this evidence, considered in the light most favorable to the government, was sufficient to support the verdict against the defendant under the "carry" provisions of section 924(c).  *Id.* at 357-60; *see also United States v. Eyer*, 113 F.3d 470, 475-76 (3d Cir. 1997) (conviction under section 924(c) upheld based upon evidence revealing the existence of a loaded handgun in the console between two front seats of a vehicle in which the defendant was traveling, together with the fact that the gun was carried together with drugs into a drug purchaser's apartment; based upon these circumstances the court concluded that "[defendant's] easy access to the handgun and its transportation convinces us that he was carrying it").

trafficking crimes.  *See* Respondent's Memorandum (Dkt. No. 23) Exh. C

at 193-96, 199-202, 210-14.  That evidence included testimony of White's

confrontation of rival drug dealers outside of a bar in Albany, New York

and his firing of three shots into the air in an effort to intimidate them and

other competitors.  *Id.* at 210-12.

The evidence adduced at trial also reflected that the two .357

Magnum revolvers in issue were collectively owned by the co-conspirators

as a group, and used and carried by them to facilitate their cocaine base

trafficking operations.  According to the testimony of one of the co-

conspirators, co-defendant Dana Foster used one of the Magnums to

threaten the life of a drug customer who had allegedly shortchanged the

co-conspirators during a drug deal.  Respondent's Memorandum (Dkt. No.

23) Exh. C at 215.  Both Beverly and another co-conspirator, William C.

Pritchett, testified that White carried a Magnum firearm into the Labor

Temple, an Albany nightclub, on an evening when it was expected that

rival drug dealers would be encountered and confronted.  *Id.* Exh. B at 86,

96-98, C at 202.  The testimony at trial also reflected that co-defendant

Dana Foster, another member of the conspiracy, carried the Colt firearm

referenced in count VII of the superseding indictment on the street

because of problems with drug dealers.  *Id.* Exh. B at 63-65.

These accounts of the relevant events comfortably establish petitioner's liability under counts VI and VII utilizing either the carry provisions of section 924(c) or its use proscription as amplified by *Bailey.* White's actual use and carrying of the Taurus .357 Magnum is directly established by the testimony at trial.  With regard to the Colt .357 Magnum, its use and carrying by petitioner's co-conspirators is established, and suffices to establish his co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180 (1946), provided that White conspired to commit a crime involving violence and drug trafficking, the section 924(c) offense was committed in furtherance of the conspiracy, and the offense was a  reasonably foreseeable consequence of an act furthering the unlawful agreement.  *Rosario*, 164 F.3d at 734 (citing *United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996) and *United States v. Romero,* 897 F.2d 47, 51 (2d Cir. 1990)).  The existence of a conspiracy in this case was proven by virtue of petitioner's conviction on count I of the superseding indictment.  Similarly, the evidence adduced during White's trial reflects that the section 924(c) offenses were committed in furtherance of that conspiracy, and that they were

21

reasonably foreseeable, based upon the existence of circumstances by which White knew or reasonably should have known of the use of the guns to further the objectives of the conspiracy.  As was noted by the Second Circuit in *Rosario*, "[r]ecognizing that in the drug culture, 'firearms are the tools of the trade,' any reasonable juror would conclude that the § 924(c) violations were a reasonably foreseeable concomitant to the drug sales."  *Rosario*, 164 F.3d at 735 (citing, *inter alia*, *United States v. Wilson*, 105 F.3d 219, 221 (5th Cir.), *cert. denied*, 522 U.S. 847, 118 S. Ct. 133 (1997)).  *Contrast United States v. Santiago*, 207 F. Supp.2d 129, 148-49 (S.D.N.Y. 2002) (firearms retrieved from a hidden compartment in a van were not carried during and in relation to a drug trafficking crime where there was no evidence of drug activity at the time the van was pulled over and seized by police officers).

Under these circumstances I find that petitioner is not entitled to the benefit of *Bailey*, and thus recommend that ground one of his petition be denied on the merits.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The petitioner in this matter is charged by indictment with weapons possession in connection with a drug conspiracy under both the "use" and

"carry" prongs of section 924(c).  The evidence adduced at trial sufficiency establishes the petitioner's guilt on those counts under both provisions, and the validity of his conviction is therefore unaffected by the Supreme Court's decision in *Bailey*.  Accordingly, I recommend rejection of the first ground of White's petition on the merits.

Addressing the second count of White's petition, I find that petitioner has failed to establish a basis for allowing him to assert the claim under section 2241, and therefore recommend its dismissal for lack of jurisdiction.  Alternatively, I recommend the dismissal of the second ground on the merits in light of the fact that the Supreme Court's decision in *Apprendi* is not retroactively applicable to cases pending on collateral review.

Based upon the foregoing it is hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).  It is

hereby further

ORDERED that the Clerk of the Court serve a copy of this report

and recommendation upon the parties by regular mail.

Dated:      June 28, 2005
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\habeas corpus\Bailey\White.wpd

24